**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CENTRAK, INC. | : | |
| | : | |
| Plaintiff, | : | Case No.: |
| | : | |
| v. | : | Judge |
| | : | |
| EMT HOLDINGS, LLC | : | |
| | : | |
| Defendant. | : | |

**COMPLAINT**

Comes now Plaintiff, CenTrak, Inc. ("CenTrak"), and for its Complaint against Defendant, EMT Holdings, LLC ("EMT"), states as follows:

**I.    PARTIES**

1.    CenTrak is a Delaware corporation with its principal place of business located at 826 Newtown-Yardley Road, Newtown, Pennsylvania, 18940. CenTrak provides industry leading real-time location systems ("RTLS") to the healthcare industry. CenTrak's RTLS products include both hardware and software applications. In addition to providing hardware and software, CenTrak also provides its customers with necessary technical training and support services.

2.    EMT is a Nevada company with its principal place of business located at 403 Kornblau Terrace Southeast, Leesburg, Virginia, 20175. EMT is registered to do business in Virginia as a foreign limited liability company. Upon information and belief, EMT has two members, Marcus Treiber and Eryn Appell, who are both residents of Virginia. EMT is a vendor authorized to sell directly to healthcare facilities within the federal government, including the Department of Veterans Affairs.

**II.    JURISDICTION AND VENUE**

3.      Jurisdiction and venue are proper in this Court because (1) complete diversity exists between CenTrak and EMT, (2) the amount in controversy exceeds $75,000, and (3) the Reseller Agreement signed by EMT provided that "[e]ach party irrevocably and unconditionally agrees that it will not commence any action, litigation, or proceeding of any kind whatsoever against the other party in any way arising from or relating to this Agreement, including all Exhibits, schedules, attachments, and appendices attached hereto and thereto, and all contemplated transactions, in any forum other than the Eastern District of Pennsylvania, the courts of Bucks County, Pennsylvania, and any appellate court from any thereof."

## III.    **STATEMENT OF FACTS**

4.      This lawsuit arises out of a Reseller Agreement executed between CenTrak and EMT, dated June 26, 2023("Agreement").  Pursuant to the Agreement, Centrak agreed to sell RTLS hardware and software products, which EMT would then resell to healthcare facilities operated by the federal government.  In addition to the RTLS products, CenTrak also agreed to provide necessary technical training and support services.  A true, accurate, and redacted copy of the Agreement is attached as **Exhibit A**.  All redactions were made to preserve CenTrak's confidential business information.

5.      Under Section 2 of the Agreement, "CenTrak appoint[ed] Reseller [EMT], and Reseller accept[ed] appointment, as a nonexclusive reseller of the CenTrak Products in the Territory solely to End Users (directly)[.]"

6.      Under Section 4, CenTrak agreed to provide EMT (1) technical support for installation, (2) product update information, (3) names and contact information of key personnel, (4) sales support including assisting with critical presentations, (5) input on product ideas and market information, and (6) access to CenTrak's executives.

7. Under Section 5, EMT agreed to, among other things, "use commercially reasonable efforts to promote and sell the CenTrak Products to End Users in the Territory."

8. Under Section 8.2.1 and 8.2.2, EMT agreed to pay CenTrak's invoices for products and services "within thirty (30) days of receipt of the applicable invoice."

9. Under Section 8.3, if EMT failed "to pay any portion of an invoice when due (to the extent not disputed in good faith pursuant to Section 8.5), Reseller [EMT] will be subject to a late payment charge equal to the lesser of (i) one and one-half of one percent (1.5%) per month or (ii) the highest amount allowed by applicable law."

10. Under Section 8.5, EMT agreed that it "shall notify CenTrak in writing of any dispute with any invoice (along with a reasonably detailed dispute description) within ten (10) business days from Reseller's [EMT's] receipt of the subject invoice." EMT further agreed that it "will be deemed to have accepted all invoices for which CenTrak does not receive timely notice of disputes and shall pay all undisputed amounts due under these invoices within the period set out in Section 8.2."

11. Under Section 8.6, EMT also agreed that it "shall perform its obligations under this Agreement without setoff, deduction, recoupment, or withholding of any kind for amounts owed or payable by CenTrak whether under this Agreement, applicable law, or otherwise and whether relating to CenTrak's breach, bankruptcy, or otherwise and whether under this Agreement, any purchase order, any other agreement between (a) Reseller [EMT] or any of its affiliates and (b) CenTrak or any of its affiliates, or otherwise."

12. Under Section 10.2, "the prevailing party in any litigation or arbitration pertaining to the collection of amounts due to CenTrak arising out of the sale, purchase, or trade of CenTrak Product(s) shall be entitled to recovery of reasonable attorneys' fees and costs."

13. Under Section 13.3, "[e]ither party may terminate this Agreement if the other party materially breaches this Agreement and either the breached cannot be cured, or, if the breach can be cured, it is not cured within thirty (30) days of receipt of written notice of such breach from the non-breaching party."

14. Under Section 13.4, "[i]f the Agreement is terminated by CenTrak pursuant to Section 13.3 above, the indebtedness of Reseller [EMT] to CenTrak not already due will become due and payable in accordance with the payment terms of this Agreement."

15. CenTrak provided all products and service in accordance with the Agreement. Between September 25, 2024, and October 31, 2025, CenTrak issued invoices to EMT for CenTrak's goods and services, which EMT accepted but for which EMT failed to pay.[1] True and accurate copies of CenTrak's outstanding invoices to EMT are attached as **Exhibit B**.

16. On November 10, 2025, CenTrak served EMT with a notice of default pursuant to Section 8.2 and 13.3 of the Agreement. CenTrak's notice of default was served via email and UPS overnight mail.[2] A true and accurate copy of CenTrak's November 10, 2025, notice of default is attached as **Exhibit C**.

17. EMT did not respond to CenTrak's notice of default and failed to pay the outstanding amount due and owing.

18. As a result, on January 15, 2026, CenTrak served EMT with a notice of termination of the Agreement and demanded immediate payment of all outstanding invoices. CenTrak's notice of termination was served via email and UPS overnight mail.

---

[1] The last payment CenTrak received from EMT was on February 7, 2025, and related to CenTrak invoice numbers 1053494 and 1053495.

[2] Under Section 19.3, any notice under the Agreement was deemed served (1) when delivered by electronic mail (email), or (2) one business day after being sent by recognized international overnight courier service (such as FedEx).

19.    As of March 2, 2026, the outstanding principal balance owed to CenTrak by EMT is $188,948.20, plus contractual interest in the amount of $20,859.14.

## COUNT I
### (Breach of Contract)

20.    CenTrak hereby incorporates the preceding paragraphs as if fully restated herein.

21.    CenTrak provided RTLS goods and services to EMT, which EMT accepted.

22.    CenTrak fully performed its obligations under the Agreement.

23.    Between September 25, 2024, and October 31, 2025, CenTrak issued invoices to EMT.

24.    EMT, however, has failed to pay CenTrak's invoices.

25.    As a result, EMT breached the Agreement.

26.    CenTrak has suffered harm as a result of EMT's breach in the principal amount of $188,948.20, plus contractual interest in the amount of $20,859.14 as of March 2, 2026, plus attorney's fees, plus post-judgment interest, and costs.

## COUNT II
### (Unjust Enrichment)

27.    CenTrak hereby incorporates the preceding paragraphs as if fully restated herein.

28.    CenTrak conferred a benefit on EMT in the form of its RTLS products and related services.

29.    CenTrak provided its RTLS products and related services to CenTrak with the reasonable expectation of receiving full compensation for the same.

30.    The reasonable value of the goods and services EMT received from CenTrak is $188,948.20, plus pre and post-judgment interest, and court costs.

31.    Thus, in the event the Court does not find that EMT breached the Agreement, EMT has been unjustly enriched by accepting CenTrak's goods and services without remitting full payment to CenTrak for the same.

**WHEREFORE**, Plaintiff, CenTrak, Inc., respectfully seeks the following relief against Defendant, EMT Holdings, LLC:

1.    On Count I, judgment against EMT for breach of contract in the principal amount of $188,948.20, plus contractual interest in the amount of $20,859.14 as of March 2, 2026, plus attorney's fees, plus post-judgment interest, and costs.

2.    In the alternative, and only in the event the Court does not find for CenTrak as it relates to Count I, a judgment against EMT for unjust enrichment in the amount of $188,948.20, plus pre and post-judgment interest, and court costs;

3.    Any and all other legal or equitable relief to which CenTrak is entitled.

Respectfully submitted,

/s/David V. Volk
David Volk, Esquire
Attorney ID:  208444
Cipriani & Werner, P.C.
Three Valley Square, Ste. 305
512 East Township Line Road
Blue Bell, Pennsylvania 19422
Phone:  (610) 567-0700
Email:  dvolk@c-wlaw.com

Justin L. Knappick (*pro hac vice forthcoming*)
Dressman Benzinger LaVelle PSC
109 East Fourth Street
Covington, Kentucky  41011
Phone:  (859) 426-2167
Email:  jknappick@dbllaw.com
*Attorneys for Plaintiff CenTrak, Inc.*